IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WROPHAS MEEKS, M.D., Individually and as Successor in Interest to the Logan Park Imaging LLC Profit Sharing Plan Dated 8-1-13, <br><br> Plaintiffs, <br><br> vs. <br><br> ATHENE ANNUITY AND LIFE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 23-cv-01532-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs, Logan Park Imaging LLC ("Logan Park") and its successor in interest, Wrophas Meeks, M.D., filed this action against Athene Annuity and Life Company ("Athene"), for alleged mismanagement of a life insurance policy, which led to Meeks' inability to timely reinstate the Policy or obtain cash surrender value (Doc. 1). Now pending before the Court is Athene's motion for summary judgment (Doc. 36), Meeks' response (Doc. 37), and Athene's reply (Doc. 40). For the following reasons, the motion is **GRANTED in part**.

### Background

The following facts are undisputed unless otherwise noted: On June 24, 2003, Plaintiff Dr. Wrophas Meeks, an owner of Logan Park Imaging LLC, applied for a whole life insurance policy with Indianapolis Life Insurance Company, a predecessor in interest to Athene Annuity and Life Company (Doc. 37, p. 2 ¶ 1). The policy ("Policy"), issued on September 10, 2003 and owned by Logan Park with Meeks as the insured, was classified as Standard (Doc. 37, p. 2 ¶3; Doc. 40, pp. 2–3 ¶5) and had a face value of $4,233,617 (Doc. 37, p. 2 ¶ 3).

The Policy includes a non-forfeiture provision for continuation upon non-payment of the premium (Doc. 37, p. 3 ¶ 4). Depending on the Policy class, the Policy can continue as either Extended Term Insurance ("ETI") or Reduced Paid-Up Insurance (RPU) (*Id.*). If the Policy continues as ETI, the amount of term insurance is "equal to the Death Benefit Amount less any Indebtedness" (Doc. 20-1, pp. 10–11; Doc. 37, p. 4 ¶6). If it continues as RPU, the amount of insurance is determined by using the net cash value (Doc. 20-1 p. 11; Doc. 37, p. 4 ¶ 7).

Shortly after the issuance of the Policy, Meeks amended his Policy class to Special, which would continue the Policy as RPU if the non-forfeiture provision is triggered (*Id.*, p. 15, ¶ 40). Additionally, the Policy could be reinstated within five years after the due date of the unpaid premium during the lifetime of the insured, subject to meeting other specific requirements (Doc. 20-1, p. 8).

Meeks paid his first annual premium in 2003 (Doc. 37, p. 4 ¶ 9). The parties dispute whether the Policy went into non-forfeiture status in 2004 and was reinstated in 2005 (Doc. 36-1, pp. 4–5 ¶ 15; Doc. 37, p. 5 ¶ 10). Meeks paid the subsequent premiums for the 2004–07 Policy years (*Id.*, pp. 5–6 ¶¶ 11–13, 15).

In November 2006, Aviva purchased Amerus Life, the corporate parent of Indianapolis Life, and Meeks' Policy was transferred to Aviva (Doc. 37, p. 5 ¶ 14). The Policy went into non-forfeiture status in 2008 (*Id.*, p. 6 ¶ 16). In 2009, an application for reinstatement and insurability was submitted. It was initially denied but was reinstated in 2010 (*Id.*, pp. 7–8, ¶¶ 18–20). In May 2010, subsequent to reinstatement, Meeks took out a loan on the Policy in the amount of $500,000 (*Id.*, p. 10 ¶¶ 24, 25).

According to Athene, Meeks executed a form "AUTHORIZATION TO USE POLICY VALUES TO PAY ANNUAL PREMIUM" as part of the 2010 reinstatement (Doc. 37, pp. 8–9,

¶ 22). Meeks denies executing the document but admits the value pay authorization (*Id.*, p. 10 ¶ 26). Pursuant to the value pay authorization, the annual premium was deducted from the policy value for the 2009–10 policy year through the 2011–2012 policy year (Doc. 37, p. 10 ¶ 26). For the 2012–13 policy year, the policy value was insufficient to pay the annual premium.

On August 15, 2012, Aviva sent a notice to Meeks requesting the annual premium payment of $437,120.96 (*Id.*, p. 11 ¶ 28). Meeks claims he never received the notice and therefore, no additional payment was made (*Id.*, p. 11 ¶ 29). Meeks also denies that he received a premium request notice from Aviva in September 2012 (*Id.*, p. 11 ¶ 30). On November 1, 2012, the Policy (incorrectly) continued on ETI in accordance with the non-forfeiture provisions, and a notice was mailed to Meeks (Doc. 37, p. 12 ¶ 32). Meeks denies receiving such notice (*Id.*).

Athene claims that from 2012 to 2015, numerous notices regarding annual reports, change of business[1], and Policy termination were sent to Meeks (Doc. 36-1, pp. 68–79). Meeks denies receiving the notices (Doc. 37, pp. 13–14, 24; Doc. 36-2). Meeks asserts that at an unspecified time, he began contacting Athene concerning the status of the Policy, but was repeatedly denied information (Doc. 37-1, p. 3 ¶¶ 16–21; *Id.*, pp. 23–32; Doc. 40, p. 8 ¶ 19). He claims that he received notice in late 2020, stating the Policy was terminated in June 2015 (Doc. 40, p. 11 ¶ 27).

Meeks filed the instant case in the Circuit Court of St. Clair County, Illinois on April 3, 2023; Athene timely removed the action to this Court (Doc. 1-1). In October 2024, Athene acknowledged an error in handling the non-forfeiture provision and corrected the policy status to RPU with a face value of $1,022,726.28, effective as of September 10, 2012 (Doc. 37, p. 16 ¶ 43). Meeks' attorney was advised of this reinstatement (*Id.*).

---

[1] In October 2013, Athene purchased Aviva, and Meeks' policy was transferred to Athene (Doc. 37, p. 13 ¶ 34).

## Discussion

As a threshold matter, Athene contends statute of limitations bars Plaintiffs' claims. Specifically, citing *Deutsche Bank Nat'l Trust Co. v. Roongseaung*, 2019 IL App (1st) 180948, ¶ 30, Athene argues Plaintiffs' denials to receiving the written communications sent by Athene and its predecessors in interests from 2012 through 2015 should be disregarded because "properly addressed letters sent via regular mail carry a presumption of delivery when they are deposited in the mail with postage prepaid." (Doc. 40, p. 14). However, because the "denial of receipt by addressee . . . rebuts the presumption [of delivery]", the statute of limitations issue "becomes a question of fact to be decided by the trier of fact." *Liquorama, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 86 Ill. App. 3d 974, 978 (1st Dist. 1980).

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). The moving party is entitled to summary judgment if the non-moving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

### Count I - Breach of Contract

Under Illinois law, "[t]he elements of a claim of breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract

by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (internal citations omitted).

It is undisputed that Meeks purchased the life insurance policy from Athene's predecessor. He later amended the Policy from Standard to Special class, so that the Policy would be converted to RPU if the non-forfeiture clause was triggered. The Policy was incorrectly converted to ETI in 2012 due to administrative errors. In October 2024, Athene corrected the status to RPU with a face value of $1,022,726.28, retroactively effective as of September 10, 2012.

Athene argues that because it retroactively corrected the non-forfeiture clause status, Plaintiffs suffered no harm and thus, the breach of contract claim fails as a matter of law. However, Meeks also claims injury and damages due to the absence of notices and the denied access to information; a lost opportunity to reinstate the Policy for the full whole life death benefit or the opportunity to withdraw its cash surrender value (Doc. 37, pp. 24, 29). As such, Athene is not entitled to summary judgment on Count I.

### Count II - Bad Faith

To establish a bad faith insurance claim, a plaintiff must establish that: (1) the duty to settle arose; (2) the insurer breached the duty; and (3) the breach caused injury to the insured. *Haddick ex rel. Griffith v. Valor Ins.*, 198 Ill.2d 409, 416 (Ill. 2001). Here, Plaintiffs argue that Athene was guilty of bad faith by failing to properly maintain records or provide notices about the status of the Policy. However, they provide no authority suggesting a bad faith claim applies in situations where no claim has been made under a policy. Indeed, absent an actual claim, no duty to settle can arise. Because Meeks never filed a claim under the Policy, summary judgment is proper with respect to Count II.

### Counts III and IV - Misrepresentation

To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish the following elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 228 Ill.2d 324, 342–343 (Ill. 2008). A claim for negligent misrepresentation "has essentially the same elements, except that . . . [t]he defendant need not know that the statement is false." *Board of Educ. Of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 452 (Ill. 1989).

Meeks claims the information in his 2014 annual report, including the ETI conversion and the amount of death benefits, was fraudulent. At the same time, he claims he did not receive the report "until sometime after 2020" (Doc. 37, p. 28). Because he claims not to have been aware of the report's existence when the Policy was terminated, he could not have relied on it to his detriment. Moreover, there is no evidence of damages resulting from such reliance after 2020. Thus, Athene is entitled to summary judgment on Counts III and IV.

### Count V - Promissory Estoppel

Meeks also claims he relied on the information in Athene's 2014 annual report indicating that no further premiums were due and ultimately lost the opportunity to reinstate his policy or withdraw its cash surrender value as originally intended. Athene argues that the 2014 report was accurate because the Policy was in a non-forfeiture status and thus requiring no additional premiums.

To prevail on a claim based on promissory estoppel, the plaintiff must allege and prove that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise,

(3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to its detriment." *Matthews v. Chicago Transit Authority*, 2016 IL 117638 ¶ 95 (Ill. 2016). As previously noted, Meeks cannot claim he relied on information in the report to his detriment "sometime after 2020" when the Policy had been terminated for over five years. Athene is also entitled to summary judgment on Count V.

### Count VI - Unjust Enrichment

To prove unjust enrichment, a plaintiff must establish that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (Ill. 1989). Here, whether Athene mishandled the Policy, whether as a result, Meeks suffered damages from the unjust retention of his $2 million investment, and whether such a retention "violates the fundamental principles of justice, equity, and good conscience" are questions of fact for the jury's determination. As such, Athene is not entitled to summary judgment on Counts VI.

### Count VII - Equitable Accounting

To obtain an equitable accounting, the plaintiff must show "the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Chicago Architectural Metals, Inc. v. Bush Constr. Co., Inc.*, 2022 IL App (1st) 200587, ¶ 6. Here, Plaintiffs have an adequate remedy at law on their breach of contract and unjust enrichment claims—they may not pursue equitable accounting. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting . . . is . . . the absence of an adequate remedy at law."); *First Commodity*

*Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("A court may refuse to award an equitable accounting to a party who has an adequate remedy at law.").

### Count VIII - Declaratory Judgment

Plaintiffs seek a declaratory judgment. However, Plaintiffs' declaratory judgment claim is duplicative of their breach of contract claim. It seeks the same relief and cannot survive as a matter of law. See *Levy v. W. Coast Life Ins. Co.*, 2021 WL 5163304, at *5 (N.D. Ill. Nov. 6, 2021) ("The Court dismisses the declaratory judgment claim in Count 1 because it is duplicative of the breach of contract claim in Count 2."); *Frazin v. Paul Revere Life Ins. Co.*, 2018 WL 1561732, at *5 (N.D. Ill. Mar. 30, 2018). Count VIII is subject to summary dismissal.

### Conclusion

For the forgoing reasons, Athene's motion for summary judgment is **GRANTED in part**. Judgement is **GRANTED** in favor of Athene Annuity and Life Company on Counts II, III, IV, V, VII, and VIII, and is **DENIED** with respect to the claims asserted in Counts I and VI.

**IT IS SO ORDERED.**

**DATED:  June 12, 2025**

**STACI M. YANDLE**
**United States District Judge**